**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**CHASTITY WHITE and TRACY COON, individually and on behalf of others similarly situated,**
**Plaintiffs,**

**v.** **Case No. 3:25-cv-1231-HES-MCR**

**SOUTHEASTERN GROCERS, LLC d/b/a Winn-Dixie,**
**Defendant.**
______________________________________/

**ORDER**

This matter is before this Court on Plaintiffs' "Motion for Notice and Conditional Certification and Incorporated Memorandum of Law" (Dkt. 30), Defendant's Response in Opposition (Dkt. 35), and Plaintiffs' Reply (Dkt. 36).

I.

Plaintiffs Chastity White and Tracy Coon bring this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., individually and on behalf of other similarly situated employees. (Dkt. 17 ¶ 61–68). This case centers on Plaintiffs' allegation that Defendant Southeastern Grocers, LLC, doing business as Winn-Dixie, misclassified salaried Customer Service Managers ("CSMs") as exempt from overtime requirements. As a result, Plaintiffs allege, Defendant failed to pay CSMs overtime compensation for

hours worked over forty in a workweek. Plaintiffs seek unpaid wages and other available damages for themselves and similarly situated employees. (*Id.* ¶¶ 37–68).

Plaintiffs now seek conditional certification of an FLSA collective consisting of "all current and former salaried CSMs who were classified as exempt and who worked for Winn-Dixie in Florida, during any workweek from October 14, 2021, until the date of judgment in this action."[1] (*Id.* ¶ 19; Dkt. 30, p. 1). They also seek authorization to send notice by text message, e-mail, and regular mail, giving potential collective members the opportunity to opt in. (Dkt. 30, pp. 20–22). In addition, Plaintiffs request a sixty-day notice period, permission opt-in through electronic signatures, and a reminder notice. (*Id.*).

In support of their Motion, Plaintiffs submit declarations from CSMs who worked in the Jacksonville, Dunedin/Largo, and Lynn Haven locations during non-overlapping periods between January 2022 and February 2025. (Dkt 30-4 ¶ 2, Dkt 30-5 ¶ 2, Dkt 30-6 ¶ 2). These declarations state, in substance, that CSMs performed similar customer service and front-end duties, were expected to perform the same work as hourly employees, worked more than 40 hours per week, were paid a salary, and were not paid overtime. (Dkt 30-4 ¶¶ 3–5, 8–10; Dkt. 30-5 ¶¶ 2–5, 7–9; Dkt. 30-6 ¶¶ 3–6, 9). The

[1] The Parties agreed to toll the statute of limitations in this action for White and all CSMs from September 11, 2024, to August 22, 2025 (Dkt. 30, n. 1).

declarants further assert that they were all misclassified as exempt and that Winn-Dixie's policies to stay within labor budgets and avoid overtime for hourly employees caused CSMs to work uncompensated overtime. (Dkt 30-4 ¶¶ 2, 6; Dkt. 30-5 ¶¶ 2, 5; Dkt. 30-6 ¶¶ 2, 6).

The declarations also address whether other potential collective members may be similarly situated. All declarants allege that they worked with and know other CSMs who performed similar duties, were subject to the same policies, and would join a collective action if notified. (Dkts. 30-4 ¶¶ 7, 9, 13; 30-5 ¶¶ 6, 8, 12; 30-6 ¶¶ 7, 10, 13). Plaintiffs argue that, taken together, these allegations meet the modest showing required for conditional certification. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208 (11th Cir. 2001).

Defendant opposes conditional certification. Defendant is a grocery chain with approximately 350 stores in Florida, employing more than 500 CSMs. (Dkts. 17 ¶¶ 21, 33; 26 ¶ 4; 35-1 ¶ 15). Although Defendant concedes that CSMs are classified as salaried and exempt under the FLSA (Dkt. 26 ¶¶ 5–6), it argues that broad notice would be unfair. Relying on a five-factor test, Defendant contends that Plaintiffs rely on a small number of short-term declarations, fail to establish sufficient interest from other employees, and improperly seek statewide notice despite store-to-store variations in CSM duties. (Dkt. 35).

To support its opposition, Defendant submits several declarations from longer-tenured Florida CSMs who do not wish to join the FLSA Collective. (Dkts. 35-2–35-11). These declarants assert that CSMs primarily perform managerial duties, including supervising employees, participating in hiring and discipline, scheduling, and managing front-end operations.[2] Defendant also submits a declaration from Winn-Dixie's "Chief People Officer" ("CPO"), who disputes Plaintiffs' claim that labor budgets caused CSMs to replace hourly workers. (Dkt. 35-1). The CPO states that labor budgets were not adjusted for that purpose but were software-optimized using historical sales data and subject to adjustment by Regional Finance Managers and Store Managers. (*Id.* ¶¶ 8–13).

II.

The FLSA permits employees to maintain an action "for and in behalf of himself or themselves and others similarly situated." 29 U.S.C. § 216(b). An FLSA collective action requires employees to affirmatively opt in by "filing written consent with the court." *Hipp*, 252 F.3d at 1216 (11th Cir. 2001) (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir. 1996)).

"The key to starting the motors of a collective action is a showing that there is a similarly situated group of employees." *Morgan v. Family Dollar*

[2] *See* Dkts. 35-2 ¶¶ 4–9; 35-3 ¶¶ 4–3; 35-4 ¶¶ 3–10; 35-5 ¶¶ 3–11; 35-6 ¶¶ 3–12; 35-7 ¶¶ 5–12; 35-8 ¶¶ 3–11; 35-9 ¶¶ 2–11; 35-10 ¶¶ 2–11; 35-11 ¶¶ 3–14.

*Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008). Although neither the FLSA nor the Eleventh Circuit imposes a rigid process for determining whether employees are similarly situated, the Eleventh Circuit has sanctioned a two-stage procedure for managing FLSA collective actions in the pretrial phase:

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question.

*Hipp*, 252 F.3d at 1218 (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995)).

Considering this "fairly lenient" standard, "[t]he district court's broad discretion at the notice stage is thus constrained, to some extent, by the leniency of the standard for the exercise of that discretion." *Morgan*, 551 F.3d at 1239 (internal citations and alterations omitted). Accordingly, FLSA collective action plaintiffs need not show that their positions are identical to

obtain conditional certification, but instead "bear the burden of demonstrating a 'reasonable basis' for their claim of class-wide discrimination." *Grayson*, 79 F.3d at 1097 (citing *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983)). A showing that other employees desire to opt in and that Plaintiffs' positions are similar to those held by putative members is sufficient. *See id.*; *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991).

Once this threshold is satisfied, district courts may exercise their discretion and facilitate notice to potential opt-in plaintiffs. *See Dybach*, 942 F.2d at 1567 ("[T]he 'broad remedial purpose' of the [FLSA] is best served if the district court is deemed to have the power to give such notice to other potential members of the plaintiff class . . . .") (quoting *Braunstein v. E. Photographic Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1978)). In doing so, the court does not resolve the merits of the FLSA claim, make credibility determinations, or decide whether the collective should survive to trial. *See Anderson v. Cagle's Inc.*, 488 F.3d 945, 952-53 (11th Cir. 2007).

Yet, the notice-stage burden is not totally "invisible," *Brooks v. Rainaldi Plumbing Inc.*, No. 6:06-cv-631, 2006 WL 3544737, at *2 (M.D. Fla. Dec. 8, 2006), and courts "have routinely denied requests for conditional certification where plaintiffs attempt[ed] to certify a broad class based only on the conclusory allegations of a few employees." *Simpkins v. Pulte Home Corp.*, No. 6:08-cv-130-Orl-19DAB, 2008 WL 3927275, at * 2 (M.D. Fla. Aug. 21, 2008).

Similarly, district courts retain discretion to deny or to narrow conditional certification. *See Smith v. Cable Wiring Specialist, Inc.*, No. 2:14-cv-277-FtM-29DNF, 2014 WL 4795160, at *3 (M.D. Fla. Sept. 25, 2014).

III.

A. Sufficient interest

While FLSA plaintiffs must "demonstrat[e] a reasonable basis for crediting their assertions that aggrieved individuals exist[] in the broad class that they proposed," *Haynes* 696 F.2d at 887, there is no "magic number requirement for the notice stage." *Plummer v. PJCF, LLC*, No. 2:15-cv-37-FtM-38CM, 2015 WL 2019380, at *2 (M.D. Fla. Apr. 30, 2015).

Accordingly, although "[m]ere belief or unsupported expectations that additional plaintiffs will come forward are insufficient," *Denson v. Architectural Coatings, Inc.*, No. 8:10-cv-1212-T-30TGW, 2011 WL 46122, at *2 (M.D. Fla. Jan. 6, 2011), courts within the Eleventh Circuit have granted conditional certification where plaintiffs submitted a limited number of declarations from individuals seeking to opt in, particularly where those submissions provided a factual basis to believe that other similarly situated employees desired to join. *See Plummer v. PJCF, LLC*, No. 2:15-CV-37-FTM-38, 2015 WL 2019380, at *2 (M.D. Fla. Apr. 30, 2015), *on reconsideration in part*, No. 2:15-CV-37-FTM-38CM, 2015 WL 2359996 (M.D. Fla. May 18, 2015) (explaining, "Although there is no magic number requirement for the notice

stage, the presence of three opt-in plaintiffs, each having filed a declaration describing Defendant's applicable wage and hour policies and their desire to join in this suit, satisfies the Court that others desire to join in the action."); *Mondello v. ICF Tech., Inc.*, No. 8:24-cv-1037-SPF, 2025 WL 2223115, at *3 (M.D. Fla. Jan. 16, 2025) (granting conditional certification of Florida-wide class where plaintiff submitted declaration of one additional opt-in member).

Five individuals, including Plaintiffs, are now participating in this action (Dkt. 38), and three individuals, including Plaintiffs, submitted declarations attesting to their interest. These declarations further indicate that, based on conversations with other CSMs, the declarants know other individuals who will join if given notice. (Dkts. 30-4; 30-5; 30-6). Defendants cite several cases in opposition, but those cases involved putative collectives with potentially hundreds or thousands of members—circumstances different from this case, which is limited to Florida and involves at most about 500 putative members. *See, e.g.*, *Shaw v. Bank of Am., N.A.*, No. 1:08-cv-2819-WSD, 2009 WL 10665138, at *6 (N.D. Ga. Apr. 10, 2009) ("[W]here, such as here, only two or three individuals out of an *alleged class of thousands* have opted in, there is not sufficient evidence of interest") (emphasis added); *Robinson v. Dolgencorp, Inc.*, No. 5:06-cv-133-Oc-10GRJ, 2006 WL 3360944, at *3–4 (denying conditional certification based on two to three affidavits where putative class involved hundreds of thousands of potential members). So, Plaintiffs have

made the modest showing of interest required for conditional certification of a relatively limited class at the notice stage.

B. Notice-stage similarity

At this stage, Plaintiffs "need show only that their positions are similar, not identical, to the positions held by the putative class members." *Hipp*, 252 F.3d at 1217 (quoting *Grayson*, 79 F.3d at 1096). Plaintiffs' and the putative members' positions should be similar "with respect to their job requirements and with regard to their pay provisions." *Dybach*, 942 F.2d at 1568. Plaintiffs have made this modest factual showing.

Defendant admits that all CSMs are salaried, classified as exempt, and thus subject to the same pay policy. (Dkt. 26 ¶¶ 5–6). Furthermore, the proposed collective is limited to salaried CSMs at Winn-Dixie locations in one state—Florida—who were classified as exempt. (Dkt. 30, p. 1). All Winn-Dixie CSMs are meant to perform similar managerial duties (Dkt. 35-1 "Customer Service Manager"), yet Plaintiffs allege that they expend significant time performing the same duties as hourly, overtime-eligible employees. CSMs allegedly undergo similar managerial training emphasizing "personally performing the same non-managerial work as hourly employees." (Dkt. 30-6 ¶ 3). The CSM declarants also describe similar work requirements—unloading merchandise, preparing sales areas, helping customers on the floor, stocking products, performing cashier duties, and so on. (Dkts. 30-4–30-6).

Naturally, CSMs at the Jacksonville Winn-Dixie may perform day-to-day work that differs slightly from work performed at the Lynn Haven location. (Dkt. 35, p. 6). Even so, marginal—even appreciable—differences do not defeat similarity now. *See, e.g.*, *Vondriska v. Premier Mortg. Funding, Inc.*, 564 F. Supp. 2d 1330, 1335 (M.D. Fla. 2007).

Defendant submits declarations from other Winn-Dixie employees who claim to have regularly performed "the exempt level work called for in the job description." (Dkt. 35, p. 12). But "factual issues showing variations are not dispositive at the stage for conditional certification." *Thomas v. Waste Pro USA, Inc.*, 360 F. Supp. 3d 1313, 1326 (M.D. Fla. 2019). Such disputes are better addressed at the decertification stage, where the court may "make[] a factual determination on the similarly situated question." *Hipp*, 252 F.3d at 1218 (citation omitted). Affirming conditional certification here does not preclude Defendant from moving for decertification after discovery has progressed. Then Plaintiffs "*may* . . . not succeed in maintaining a collective action under § 216(b) based solely on allegations and affidavits, depending upon the evidence presented by the party seeking decertification." *Anderson*, 488 F.3d at 953 (emphasis in original).

C. The five-factor test

Some district courts have used a five-factor test to assess whether FLSA plaintiffs and purported class members are similarly situated, considering:

> (1) whether the plaintiffs all held the same job title; (2) whether they worked in the same geographical location; (3) whether the alleged violations occurred during the same time period; (4) whether the plaintiffs were subjected to the same policies and practices, and whether these policies and practices were established in the same manner and by the same decision-maker; [and] (5) the extent to which the actions which constitute the violations claimed by plaintiffs are similar.

*Roberts v. Publix Super Mkts., Inc.*, No. 8:23-CV-2447-WFJ-CPT, 2024 WL 4753703, at *5 (M.D. Fla. Nov. 12, 2024).

Defendant claims this Court "must consider" these factors (Dkt. 35), but the Eleventh Circuit has not adopted a precise definition of "similarly situated." *See Morgan*, 551 F.3d at 1159. Thus, the factors are not binding requirements: they are non-exhaustive considerations that guide the certification analysis when useful. *See Roberts*, 2024 WL 4753703, at *11 (indicating that the factors are useful where an intrastate action involves tens of thousands of potential plaintiffs).

Courts generally employ the factors at the initial stage when conducting a more rigorous analysis after substantial pre-notice discovery or at the decertification stage. *Id.* at *4 (concluding that "a more rigorous conditional standard" is appropriate after a long pre-notice discovery period that produced a "voluminous" record); *Mathis v. Darden Rests, Inc.*, No. 12-61742-CIV, 2014 WL 4428171, at *3–4 (S.D. Fla. Sept. 1, 2014) (applying the factors at the decertification stage after considering the employment settings of more than

20,000 opt-in plaintiffs); *Walker v. Jefferson Cnty. Bd. of Educ.*, No. 2:13-cv-00524-RDP, 2016 WL 1117643, at *11 (N.D. Ala. Mar. 22, 2016) (rejecting lenient standard where FLSA case had "progressed well beyond the point that courts usually entertain an early motion for notice.").

The Parties have not conducted substantial pre-notice discovery. At this stage, the record consists only of the declarations submitted by Plaintiffs and Defendant. (Dkts. 30; 35). Accordingly, the more searching standard requested by Defendant is inapplicable here. Further, for reasons discussed above, the factors in *Roberts* weigh in favor of conditional certification at this lenient stage: Plaintiffs and putative class members hold the same CSM job title, work within the same geographic location (Florida), were subject to the same "exempt" policy and work requirements established by Winn-Dixie, and the action that constitutes the FLSA violation—Defendant's alleged "willful" misclassification of CSMs—is the uniform across purported class members. Although Plaintiffs' declarants worked for Defendant during non-overlapping periods, the alleged FLSA violations occurred within the same three-year window. (Dkt. 35, p. 9). Conditional certification is, therefore, proper even under the five-factor test endorsed by Defendant.

D. Notice procedure

Plaintiffs request notice through text, email, and mail; electronic signature acceptance; a sixty-day notice period; a reminder notice; notice

within a three-year statute of limitations period; and early discovery of a mailing list to facilitate notice. (Dkt. 30, pp. 17–24). Defendants do not expressly object to the proposed notice methods. (Dkt. 35).

"[T]he district court has the discretion to facilitate notice to potential plaintiffs and broad authority to exercise control over the collective action . . . ." *Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914, 921 (11th Cir. 2014) (internal quotation and marks omitted). Notice by regular mail and email is generally proper in FLSA collective actions where those methods are reasonably calculated to provide putative collective members with accurate, timely notice of the action. *See Palma v. Metropcs Wireless, Inc.*, No. 8:13-cv-698-T-33MAP, 2014 WL 235478, at *2–3 (M.D. Fla. Jan. 22, 2014). But a text message notice generally requires showing that a mail or email notice would be inadequate. *See Collado v. 450 N. River Drive, LLC*, No. 22-cv-23074, 2023 WL 4251018, at *14 (S.D. Fla. June 28, 2023) (explaining "text messages are intrusive, may cause unwanted monetary charges to the recipients, and are not necessary in the circumstances of this case."). Plaintiffs have not alleged unique circumstances that require text-message notice. This Court will therefore allow notice to be sent via first-class mail and email.

Additionally, this Court will allow electronic signatures and a sixty-day notice period. *See Kraft*, 2019 WL 3854989, at *6. But not a reminder notice. *See Tapley-Smith v. Pacesetter Claims Serv.*, No. 3:18-cv-1488-J-32JRK, 2020

WL 1862629, at *4 (M.D. Fla. Apr. 14, 2020) ("Reminder notices are unnecessary because they are redundant and could be interpreted as encouragement by the Court to join the lawsuit.") (citation omitted).

A three-year notice period is proper at the conditional-certification stage where the complaint plausibly alleges willful FLSA violations and willfulness has not yet been resolved on the merits. *See Abdul-Rasheed v. Kablelink Communs., LLC*, No. 8:13-cv-879-T-24 MAP, 2013 WL 5954785, at *3 (M.D. Fla. Nov. 7, 2013) ("At this early stage of the proceedings, the Court concludes that Plaintiff's allegation is sufficient to support his request for a three-year period in the Court-authorized Notice."). Thus, this Court is satisfied that notice should be given within a three-year statute of limitations period.

Finally, this Court agrees that limited discovery of the putative collective is necessary to carry out notice to putative opt-in class members. *See Sutton v. Singh*, No. 6:12-cv-1254-Orl-28TBS, 2013 WL 2474416, at *1 (M.D. Fla. May 2, 2013) (ordering defendants to produce "full names and last known addresses of putative class members").

Accordingly, it is **ORDERED**:

1. "Plaintiff's Motion for Notice and Conditional Certification and Incorporated Memorandum of Law" is **GRANTED IN PART** and **DENIED IN PART**;

2. This Court conditionally certifies the following class: "all current or former salaried customer service managers who were classified as exempt and who worked for Southern Grocers LLC, d/b/a Win-Dixie in Florida, during any workweek from October 14, 2021, until the date of judgment in this action;"

3. Defendants be directed to provide Plaintiffs with the names, job titles, dates of employment, last known addresses, and email addresses for everyone in the class within fourteen (14) days of this Court's order;

4. Plaintiffs' counsel, or a claims administrator selected by Plaintiffs' counsel, to send notice, in the form provided in Dkt. 30-1, to all individuals whose names appear on the list produced by Defendant's counsel by first-class mail and e-mail;

5. All individuals whose names appear on the list produced by Defendant with sixty (60) days from the date the notices are initially mailed to file a Consent to Become Opt-In Plaintiff, in the form provided in Dkt. 30-3; and

6. The Motion is **DENIED** to the extent that it requests notice by text message and a reminder notice.

**DONE AND ORDERED** at Jacksonville, Florida this 22nd day of July 2026.

**HARVEY E. SCHLESINGER**
UNITED STATES DISTRICT JUDGE

Copies to:
Kimberly De Arcangelis, Esq.
Andrew Ross Frisch, Esq.
C. Ryan Morgan, Esq.
Marilyn Linares, Esq.
Michael J. Palitz, Esq.
Gregg I. Shavitz, Esq.
David S. Shankman, Esq.
Mia C. Larson, Esq.
Michael R. Willats, Esq.